# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ADRIAN HAMPTON, | ) | |
| | ) | |
| Plaintiff,[1] | ) | |
| vs. | ) | 1:10-cv-01361-WTL-TAB |
| | ) | |
| ROSEGATE VILLAGE, LLC, | ) | |
| AMERICAN SENIOR COMMUNITIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## Entry Granting Motion for Summary Judgment
## and Directing Final Judgment

For the reasons explained in this Entry, the unopposed motion for summary judgment filed by defendants Rosegate Village, L.L.C. and American Senior Communities, L.L.C. [9] must be **granted.**

## Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(a). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Plaintiff Adrian Hampton ("Hampton") asserts claims of discrimination on account of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.

Title VII prohibits employers from discriminating against individuals on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A claim under § 1981 includes the same elements and employs the same analysis and methods of proof as a Title VII race claim. *Johnson v. City of Fort Wayne,* 91 F.3d 922, 940 (7th Cir. 1996).

---

[1]The clerk shall **update the docket** to reflect the plaintiff's change of address. The current address, as reported by the defendants, is: 4272 North Shadeland Avenue, Apt. 4, Indianapolis, Indiana 46226.

To successfully oppose the defendants' motion for summary judgment, Hampton must either produce direct evidence of discrimination or survive the burden-shifting test established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). In this case, however, Hampton has done neither.

## Undisputed Facts

The consequence of Hampton's failure to oppose the motion for summary judgment is that he has conceded the defendants' version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56.1(e), of which Hampton was notified. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997); *see also Koszola v. Board of Education v. City of Chicago,* 385 F.3d 1104, 1108-09 (7th Cir. 2004). The facts, for this purpose, therefore, are the following:

The defendants operate and manage an assisted-living and nursing home facility for elderly residents known as Rosegate Village, located in Indianapolis, Indiana. Hampton was hired at Rosegate Village on October 22, 2008, as a Dietary Aide. Hampton is African-American.

Rosegate Village is committed to a policy of non-discrimination. The applicable Employee Handbook prohibits discrimination on the basis of all protected classifications, including race.

Rosegate Village has a no-call/no-show policy. The Employee Handbook states that absenteeism includes not only an absence from work, but also late reporting for work. The Employee Handbook further states that a no-call/no-show is a "serious offense" and that even one no-call/no-show during an employee's 90-day introductory probationary period can constitute a voluntary resignation/termination. Specifically, Rosegate Village's no-call/no-show policy states in part as follows:

If you are absent and fail to notify your supervisor or the facility, it will be considered a No-Call/No-Show ("NCNS"). This is a serious offense. The first violation will result in a final written warning (unless the NCNS takes place during your 90-day introductory period at which time you will be considered to have voluntarily resigned your position). The second violation or two consecutive days of no-call/no-show will be considered your voluntary termination of your employment and you will be ineligible for rehire.

The Employee Handbook repeats this guidance at a later section of the Employee Handbook setting forth grounds for termination, stating that an employee is subject to immediate termination for two no-call/no-shows if beyond the first ninety (90) days of employment; and just one no-call/no-show if within the first ninety (90) days of employment.

Hampton's employment commenced on November 8, 2008. Within the first weeks following that date, Hampton was absent three times–each time on a Saturday. On two of these occasions he called in on Saturday, giving notice, and on the other occasion Hampton did not call to advise that he would be absent the requisite two hours before his work shift began. Hampton was given a "Final Written Warning" which contained the following: "if you call in one more time before your 90 days is up, it will be termination."

The next month, December 2008, Hampton was scheduled to work on December 17, 2008. Hampton did not show for his scheduled work on December 17, 2008. Rather, more than two (2) hours after his shift began on this date, Hampton telephoned his supervisor, Rick Watson, and said that he was in "court," was late, would show for work shortly if he could receive a ride, and would call to let Mr. Watson know. Hampton did not show for work nor did he call Mr. Watson back to let him know on that date. Hampton was considered a no-call/no-show on December 17, 2008.

Mr. Watson reported the December 17 incident the next day to Pat Waggoner, the Dietary Manager, who was Mr. Watson and Hampton's ultimate supervisor. Hampton was next scheduled to work on December 20, 2008. Hampton did not show for his scheduled work on December 20, 2008. After Hampton's scheduled shift had started, Mr. Watson telephoned Hampton to ask where he was. Hampton answered the phone and said that he did not know he was scheduled to work. Hampton also told Mr. Watson the reason why he did not appear for work on December 17 was because he was at a "doctor's office", not in "court" as Hampton had previously stated. Mr. Watson told Hampton he was scheduled to work that day, December 20, but Hampton said he thought he was off the schedule, he was "done," and that his uncle is an attorney, threatening a lawsuit. Hampton was considered a no-call/no-show for December 20, 2008.

The Rosegate Village Dietary Staffing Schedule prescribed that Hampton was scheduled to work both on December 17 and December 20, 2008. This Schedule was posted for all Dietary Department employees such as Hampton several days in advance, and extra copies are available for employees to take home with them. The Rosegate Village "Attendance Record" regarding Hampton states that Hampton was a no-call/no-show on December 17 and December 20, 2008. Hampton was thus terminated (actually he voluntarily terminated himself) for his no-call/no-shows in December 2008. The defendants' official internal termination notice, labeled an Employee Data Sheet, prepared by Pat Waggoner, states that Hampton was voluntarily terminated for "no-call/no show".

After Hampton was terminated from Rosegate Village in December 2008, Hampton's mother, Cheryl Martin, an African-American, continued to be employed in the Dietary Department at Rosegate Village for several months thereafter through September 2009. At the time of Hampton's termination in December 2008, the Dietary Department at Rosegate Village consisted of approximately twenty (20) employees, four (4) of whom were African-American. Multiple White/Caucasian employees have been terminated (or are considered to have voluntarily resigned) pursuant to defendants' no-call/no-show policy at Rosegate Village. More White/Caucasian employees have been terminated at Rosegate Village due to the no-call/no-show policies than have African-American employees.

## Analysis

Under *McDonnell Douglas*, Hampton must make a *prima facie* case of discrimination on the basis of his race by showing that he (1) belongs to a protected class; (2) performed his job according to his employer's legitimate performance expectations; (3) suffered an adverse employment action; and (4) was treated less favorably compared to similarly situated employees outside of the protected class. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 364-65 (7th Cir. 2009). If Hampton establishes a *prima facie* case, then the burden shifts to the defendants to set forth a legitimate, nondiscriminatory reason for the employment decision. *Id.* If the defendants make such a showing, the burden shifts back to Hampton to explain why the defendants' proffered justification was merely a pretext for discrimination. *Id.* at 365 (citing *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859-60 (7th Cir. 2008)).

The defendants argue that Hampton has failed to demonstrate that there is a genuine issue of fact as to the second and fourth elements of his *prima facie* case. It is true that Hampton has not disputed the fact that he failed to comply with the legitimate attendance policies at work. The undisputed facts demonstrate that Hampton did not meet his employer's legitimate employment expectations through his no-call/no-shows in December 2008.

In addition, Hampton has identified no similarly situated employee outside of his protected class who was treated more favorably than him. Because Hampton has not presented evidence sufficient to satisfy two elements of his *prima facie* case, the court need not proceed through the additional steps of the *McDonnell Douglas* analysis. Under these circumstances, no reasonable jury could find that the defendants discriminated against Hampton on the basis of race. Accordingly, the defendants are entitled to summary judgment on Hampton's claims of discrimination pursuant to Title VII & § 1981.

"Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993). The Supreme Court has explained that "the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). Through the process described

above, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998).

## Conclusion

The defendants' motion for summary judgment [9] is **granted** because the undisputed evidentiary record establishes that the defendants are entitled to judgment as a matter of law.

Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff, Hampton.

**IT IS SO ORDERED.**

Date: _04/25/2011_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana